[No. 27013. *En Banc.* August 25, 1938.]

EDWARD C. HUBBARD *et al., Appellants,* v. EMBASSY
THEATRE CORPORATION, *Respondent.*[1]

*Wright & Wright,* for appellants.

*DuPuis & Ferguson,* for respondent.

MILLARD, J.—This action was instituted by plaintiffs,
a marital community, to recover from defendant for
personal injuries sustained by the wife in falling to
the floor of a rest room maintained by the defendant.
From the judgment entered on the verdict in favor of
the defendant, motion for a new trial having been
overruled, the plaintiffs appeal.

As paying patrons, appellants attended respondent's
theatre in Seattle the afternoon of December 5, 1936.
At the conclusion of the show on the date mentioned
appellant wife hastily entered the rest room main-
tained by respondent for use of its lady guests. Be-

[1]Reported in 82 P. (2d) 153.

cause of her haste, she did not observe as she entered the room that it was dimly lighted and that the floor of the room was wet and slippery. Her attention was focused upon arrival at the end booth, which was visible to her when she went into the room.

The floor of the booth, which she occupied not to exceed two minutes, was six or seven inches higher than the floor of the rest room. As her foot reached the floor of the rest room proper, when she attempted to step out of the booth, her feet slipped from under her and she skidded across the width of the rest room floor on the flat of her back. It is the theory of the appellants that the injuries were sustained as a result of that fall, the proximate cause of which was the condition of the rest room floor and the dim light in the rest room.

By instruction No. 9, to which appellants properly excepted, the court charged the jury as follows:

"If you believe from the evidence that the lighting in the rest room was defective, and if you further believe from the evidence that the plaintiff realized this upon entering said rest room, then I instruct you that it was the duty of the plaintiff to exercise a greater degree of diligence, care and watchfulness upon entering and walking across the lobby of said rest room.

"You are instructed that the plaintiff, under those conditions, was required to use that degree of care which an ordinarily prudent and reasonable person would have exercised for his own safety under like or similar conditions.

"If you believe from the evidence that the plaintiff failed to exercise such degree of care as was required under the conditions existing, and that such failure contributed materially to the happening of the accident herein, then I instruct you that your verdict must be against the plaintiff and in favor of the defendant."

Appellants contend that the court erred in singling out a portion of the evidence and instructing the jury

that, if the described condition obtained, appellant wife was under the duty of exercising *a greater degree of care.*

The standard of diligence set up by the court for the guidance of the jury must be the legal standard. The employment of such terms as "greater degree of care," "higher degree of care," "highest degree of care," or other like expressions in instructions as indicating the amount of care exacted by the law under special conditions and circumstances, is misleading. Such an instruction is erroneous. In addressing itself to the use of misleading terms in instructions, the supreme court of Indiana, in *Union Traction Co. v. Berry,* 188 Ind. 514, 121 N. E. 655, 32 A. L. R. 1171, 1179, said:

"The use of such terms as 'slight care,' 'great care,' 'highest degree of care,' or other like expressions in instructions as indicating the quantum of care the law exacts under special conditions and circumstances, is misleading; and when so used they constitute an invasion of the province of the jury, whose function it is to determine what amount of care is required to measure up to the duty imposed by law under the facts of the particular case. The law imposes but one duty in such cases, and that is the duty to use due care; and the law recognizes only one standard by which the quantum of care can be measured, and that is the care which a person of ordinary prudence would exercise under like circumstances."

The instruction, in imposing a greater degree of care upon appellant wife, violates the rule announced in *Ferguson v. Yakima,* 139 Wash. 216, 246 Pac. 287, 48 A. L. R. 431, that the degree of care never changes, but that the amount of care which must be used to constitute ordinary or reasonable care varies according to the circumstances of the particular case. That case is not distinguishable from the case at bar. The er-

roneous instruction there given and what we said respecting it read as follows:

" 'A person who travels upon or across an alley in a city, and especially in the night time and after it is dark, must exercise a higher and greater degree of care for his own safety than when traveling upon or along a street or sidewalk, and I instruct you that it was the duty of the plaintiff in attempting to travel along or across the alley to take into consideration the fact that the alley was not lighted as a street is lighted, and that the city was not obliged to keep it in the same condition for travel as it was required to keep a street or sidewalk, and that it might not be as safe for travel by him as a street or sidewalk would be, and having in view all of these circumstances and conditions to exercise such reasonable care and caution in the use of the same for travel as a prudent and careful person would do under like circumstances and conditions, and if he failed to do so he cannot recover any damages for any injuries he may have sustained.'

"This we conceive is a misconception of the law. The alleys in a city, platted and dedicated to public use, are as much public highways as are the streets therein. (Rem. Comp. Stat., § 9292 [P. C. § 1181]; *Carroll v. Centralia Water Co.*, 5 Wash. 613, 32 Pac. 609, 33 Pac. 431.) They are under the control of the public authorities of such city (Rem. Comp. Stat., § 9294) [P. C. § 1267], and it is as much the duty of the city to keep them in repair for public use as it is its duty to keep in repair the highways more commonly called streets. In all instances, whether the highway be a street or alley, reasonable care in this regard must be exercised. What will constitute reasonable care, must, of course, vary with the circumstances. Reasonable care in the upkeep of an outlying and little used street might be gross negligence when applied to the much used streets in the more congested business portion of the city, but the legal duty is the same in every instance, the care exercised must be commensurate with the circumstances. The same rule applies to alleys. Little or no care in one in-

stance might be reasonable care, while in another it would be gross negligence. It is, therefore, incorrect to say, as the trial court did say in the instruction given, that a city is not obliged to keep an alley in the same condition for travel as it is required to keep a street or a sidewalk. There is no such general rule. Instances are present in every city where acts and omissions in the care of an alley would be negligence, while the same acts and omissions would be reasonable care with respect to a street or sidewalk.

"Nor is it a general rule that a person who travels upon or across an alley, whether in the nighttime or daytime, must exercise a higher and greater degree of care for his own safety than when traveling upon or along a street or sidewalk. The traveler's duty in every instance is to exercise that degree of care the circumstances and conditions require; that is to say, he must exercise that degree of care a reasonably prudent person would exercise under like and similar circumstances. The court's instructions in this regard were therefore likewise erroneous."

In *Morehouse v. Everett*, 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, the judgment was reversed because of three erroneous instructions. In holding that the degree of care never changes, but that the amount of care which must be used to constitute ordinary or reasonable care varies according to the circumstances of the particular case, we said, in harmony with the rule enunciated in *Ferguson v. Yakima, supra:*

"The appellant complains of instruction No. 3 given by the court, which reads as follows:
" 'The duty of a city with regard to the safety of its streets is to exercise ordinary care, that care which an ordinarily careful person would use to keep them safe for ordinary travel.
" 'That duty requires a higher degree of care in the case of streets which bear a heavy burden of traffic than in the case of little frequented streets, and in any case is such care as is reasonable under all circumstances.

" 'It is also the duty of the city to use reasonable care, in the light of all conditions, to see that no dangerous condition is created in its streets by its own act or under its permission.'

"The first and third sentences probably correctly state the law, but that portion, which 'requires a higher degree of care in the case of streets which bear a heavy burden of traffic than in the case of little frequented streets,' is erroneous. This question is controlled by the rule of reasonable or ordinary care, or such as a reasonably careful or prudent person would exercise under like circumstances. What would be reasonable care under one set of facts might not be reasonable care under another set of facts, but the difference would not be in the degree of care to be used, but rather in the amount of care.

" 'It should always be kept in mind that the *degree* of care never changes, but that the *amount* of care which must be used to constitute ordinary or reasonable care varies according to the circumstances of the particular case, unless otherwise provided by statute.' McQuillin's Municipal Corporations, p. 5602.

"If the instruction had read that it was the duty of the city to use 'a greater amount of care in the case of streets which bear a heavy burden of traffic than in the case of little frequented streets,' the instruction would have been correct." *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157.

In *Brick v. Seattle,* 159 Wash. 413, 293 Pac. 453, 295 Pac. 921, where we held that one inapt and obscure reference to "duty" instead of to "amount of care" could not have misled the jury under the facts of that case, we referred to *Morehouse v. Everett, supra,* but did not mention *Ferguson v. Yakima, supra.*

The rule applied in the two cases cited was not modified or overruled in *Brick v. Seattle, supra,* the instruction in which is not quoted in the opinion. We justified our position there with the statement that the simple circumstances of the case and the repeated charges to the jury giving the correct rule satisfied

us that the inapt and obscure reference to "duty" instead of to "amount of care" could not have misled the jury, although the instruction was technically incorrect.

In *Slattery v. Seattle,* 169 Wash. 144, 13 P. (2d) 464, we adhered to the rule announced in *Ferguson v. Yakima,* 139 Wash. 216, 246 Pac. 287, 48 A. L. R. 431, which rule is controlling in the case at bar, saying:

"While the *amount* of care may vary under different circumstances, the *degree* of care remains the same at all times. *Ferguson v. Yakima,* 139 Wash. 216, 246 Pac. 287, 48 A. L. R. 431; *Gabrielson v. Seattle,* 150 Wash. 157, 272 Pac. 723, 63 A. L. R. 200; 7 McQuillan on Municipal Corporations (2d ed.), § 2911. . . .

"Appellant relies on the case of *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, as sustaining its contention in this respect. The opinion in that case condemned a portion of an instruction which imposed a higher *degree* of care upon the city under varying conditions of traffic. The court in announcing the rule relative to the care required, said on page 414:

" 'What would be reasonable care under one set of facts might not be reasonable care under another set of facts, but the difference would not be in the degree of care to be used but rather in the amount of care.' "

*Ferguson v. Yakima, supra,* is again cited with approval in *Throckmorton v. Port Angeles,* 193 Wash. 130, 74 P. (2d) 890, to the effect that the degree of care never changes but that "the amount of care may vary under different circumstances."

The argument that the instruction in *Morehouse v. Everett, supra,* was prejudicially erroneous, in that two distinct and inconsistent rules were given in the same instruction, is as valid in the case at bar as in the *Morehouse* case. That this is so, a reading of the ob-

jectionable instruction in each case will disclose. If such inconsistency would tend to confuse the jury in the one case, it would surely have the same tendency in the instruction in the other case. In *Ferguson v. Yakima, supra,* the instruction there held prejudicially erroneous differs not materially from the instruction of which appellant complains in the case at bar. In *Ferguson v. Yakima, supra,* and in *Morehouse v. Everett, supra,* the court fully advised the jury as to the degree of care to be exercised by the parties. If the two distinct and inconsistent rules given by the court in those two cases would in all likelihood tend to confuse the jury, it follows that, in the case at bar, where the court did the same thing, the same rule is applicable. The situation in each of the three cases is the same.

To argue that the word "greater" in the one instruction connotes "amount" while the word "higher" in another instruction signifies or means "degree" or "quality", in an endeavor to distinguish the case at bar from the two controlling cases cited above, smacks of equivocal reasoning. So far as the meaning of the word "greater" or the word "higher" is concerned, the rule is that, for most phrases beginning with either of those words, we should consider, of course, the second word of the phrase. "Degree" and "amount" do not mean the same thing. The amount of care has to do with the quantity of diligence, whereas the degree of care connotes or signifies the quality of diligence. "Greater amount of care" means the same thing as "higher amount of care." A "greater degree of care" in an instruction merits the same condemnation as "higher degree of care," in view of the rule announced in *Ferguson v. Yakima, supra,* which we have consistently followed to the present time, and which is supported by the great weight of authority.

The judgment is reversed, and the cause remanded with direction to grant a new trial.

HOLCOMB, SIMPSON, MAIN, and BLAKE, JJ., concur.

STEINERT, C. J. (dissenting)—It may be conceded that the first paragraph of instruction No. 9, quoted in the majority opinion, was technically erroneous, in that it called for "a greater degree of care" instead of "a greater amount of care." But the question here is not whether the instruction was technically erroneous, but whether appellant was prejudiced thereby. A reading of the instructions in their entirety and a consideration of the evidence to which they apply convince me that the jury was not confused by the particular portion of instruction No. 9, and that the technical error contained therein was wholly without prejudice to appellant. The court covered the subject of "care" in four instructions, numbered 3, 5, 7, and 9.

In instruction No. 3, the court told the jury that one operating a public theatre owed a duty to its patrons to maintain the premises and all parts thereof open to patrons in such a condition as a reasonably careful and prudent theatre operator would deem sufficient to protect such patrons from danger within the theatre *while exercising ordinary care for their own safety.*

Instruction No. 5 reads as follows:

"If you find by a fair preponderance of the evidence in this case that the plaintiff Emma V. Hubbard *used that degree of care and prudence* in walking or attempting to walk through and out of the rest room at the defendant's theatre on December 5, 1936, *that a person of ordinary intelligence, care and prudence and similarly situated would have exercised under like or similar circumstances,* and that while so walking and passing or attempting to do so through and out of said rest room she slipped upon the floor thereof, by reason of the defendant's negligence in maintaining or allow-

ing for an unreasonable length of time a dangerous condition to exist upon the surface of the floor of said rest room open to the use by the plaintiff Emma V. Hubbard, and that as a proximate result of such slipping the plaintiff Mrs. Hubbard fell and was injured, then it would be your duty to return a verdict in favor of the plaintiffs in this case." (Italics mine.)

Instruction No. 7 again told the jury that the operator of a public theatre is bound to use, for the protection of its patrons, that degree of care which a reasonably careful and prudent theatre operator would deem sufficient to protect the visiting public from danger *while such patrons are exercising reasonable caution for their own safety.*

Appellants do not contend that any of these three instructions was erroneous.

We come, then, to instruction No. 9, the first paragraph of which, consisting of one sentence, erroneously uses the word "degree" for the word "amount" in designating the care to be exercised by appellant.

It will be noted that in this paragraph of the instruction there is no statement of *comparative* conditions suggestive of a greater degree of care to be exercised under one set of circumstances than would be required under another set. It will further be noted that in the second paragraph of the instruction it is expressly stated that under "those conditions," that is, the conditions described in the preceding paragraph, the degree of care required of appellant was "that degree of care which an ordinarily prudent and reasonable person would have exercised for his own safety under like or similar circumstances," which, admittedly, is the correct rule. The third paragraph of the instruction harmonizes with the second in furnishing the basis upon which the verdict is to be rendered.

Assuming that the jury was gifted with such fine

powers of discrimination as to perceive a distinction between the words "degree" and "amount," as pertaining to the care required, the jury would certainly also be of sufficient intelligence to understand the more specific language of the court, in the very next sentence, defining the degree of care to be used by appellant under the conditions as being that care which an ordinarily prudent and reasonable person would have exercised for his own safety under like or similar circumstances.

On the other hand, if the jury was not of sufficient acumen to detect and appreciate the difference between the words "degree" and "amount" in their application to the case, then, certainly, it was not misled thereby, for if the jury detected no difference in the significance of the two words, it would consider them as having the same meaning.

But it is wholly unnecessary to speculate upon the "degree" or "amount" of intelligence of the jury. It is sufficient to say that it would require more than ordinary perceptive powers by anyone not skilled in legal phraseology to assign any difference of meaning between the two words as applied to a case of negligence. I do not believe that it would occur, even to a lawyer, that there was any distinction, unless his wit had been sharpened by previous experience. The trial judge analyzed the matter exactly when he said:

"I do not believe, however, that the mere use of the word 'degree' instead of 'amount' would confuse anyone, nor would it make any difference in the jury's verdict. It is hard enough for a lawyer to see any distinction in those two words, let alone a layman. Though the instruction may not be as absolutely accurate as it might be, yet I think it states the proper rule, and I do not think that the fact that 'degree' was used instead of 'amount' made any difference. I will deny the motion for new trial."

The majority rely upon three decisions of this court

as supporting their conclusion: *Ferguson v. Yakima,* 139 Wash. 216, 246 Pac. 287, 48 A. L. R. 431; *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482; *Slattery v. Seattle,* 169 Wash. 144, 13 P. (2d) 464. It is true that those cases recognized the distinction between "greater degree of care" and "greater amount of care," and also considered the distinction as material to the particular case. But it is to be observed that the inconsistency and error in those instructions lay in the fact that, upon the question of the care required of a pedestrian, the court attempted to draw, or was asked to draw, a distinction between *streets* and *alleys* or between varying conditions of traffic upon streets. As to such *conditions,* the court held, in each instance, that the standard of care was the same. By reason of the comparative conditions described in those instances, however, it might logically be said that, in those cases, the jury was, or could have been, confused by such plainly inconsistent and erroneous instructions. But, in this case, no express comparison of conditions was made in instruction No. 9, and there is no basis for the claim that the jury was, or could have been, confused thereby. At any rate, the error contained in the first paragraph was so minute and indefinable as to be wholly absorbed in the clear, positive, and concededly correct rule laid down in the second paragraph of the instruction, as well as in all the other instructions above quoted.

If verdicts are to be set aside for every trifling error committed, then a jury trial is of little worth. I believe that verdicts should not be set aside except for errors that are patent and substantial. I am convinced that in this case there was no prejudicial error, and I, therefore, dissent from the opinion of the majority.

BEALS, GERAGHTY, and ROBINSON, JJ., concur with STEINERT, C. J.