2013 APR 29 PH 3: 52    COURT OF APPEALS DIV I STATE OF WASHINGTON

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68167-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GEORGE STEPHEN MCGOWAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |

SCHINDLER, J. — George McGowan seeks reversal of his jury conviction of possession of depictions of minors engaged in sexually explicit conduct. McGowan asserts prosecutorial misconduct in closing argument denied him a fair trial. We disagree, and affirm.

## FACTS

In May 2008, George McGowan's uncle John McGowan moved into an apartment at Providence Vincent House, a low income senior housing building in the Pike Place Market. John[1] was over 70-years-old and used a scooter or wheelchair.

In the summer of 2008, McGowan moved in with John. McGowan helped John with cooking, cleaning, and laundry. McGowan and John usually spent time every day

---

[1] We refer to John McGowan by his first name for purposes of clarity and mean no disrespect by doing so.

in the Vincent House community room, where the residents could use two in-house computers.

At McGowan's request, McGowan and John went to a Rent-A-Center store in White Center in June 2008 to rent a laptop computer. McGowan completed and signed the application and John singed the financial agreement, provided the down payment, and thereafter provided funds for the monthly rental fee.

Over the next few months, McGowan returned to Rent-A-Center several times complaining that the laptop was malfunctioning. A Rent-A-Center employee would reset the laptop, provide McGowan with a new laptop, or loan him a different laptop while servicing his rented laptop.

On October 16, McGowan returned the laptop to Rent-A-Center. McGowan told store manager Chad Criss that he believed the laptop was infected with viruses. Criss suspected that McGowan had been downloading pornography, which would explain the frequent viruses. Criss opened the laptop and began accessing recent documents, intending to confront McGowan. However, when Criss saw pictures of naked children, he closed the laptop and told McGowan that he would call him when he had a loaner laptop available. When McGowan left the store, Criss called the police. Criss gave the laptop and a statement to the responding officer. The police arrested McGowan when he returned to Rent-A-Center.

The State charged McGowan with possessing depictions of minors engaged in sexually explicit conduct.

At trial, the State argued that McGowan had exclusive use of the laptop and that he used it to access pornographic material involving children. A detective specializing

2

in computer forensics testified about the contents of the laptop and identified the depictions in a number of exhibits. The detective showed videos found on the laptop to the jury and testified to the dates and times the videos were accessed on the laptop. The detective also testified that she found two e-mail addresses, "GeorgeMcGowan71@yahoo.com" and "Irishrover104@hotmail.com," associated with particular searches on certain pornographic websites.

John and the Vincent House manager testified that McGowan would sit in the community room using the laptop while John used one of the in-house computers. John testified that he did not use the laptop, he did not know McGowan's e-mail address, and he did not know what McGowan did with the laptop.

The defense theory of the case was that John had the opportunity and the ability to access the child pornography on the laptop. McGowan admitted that he used the e-mail addresses identified by the detective but denied using the accounts to access child pornography. McGowan testified that he had given his e-mail address and password to John and that he saw John using the laptop on at least two occasions.

The jury found McGowan guilty as charged. The trial court imposed a standard-range sentence.

ANALYSIS

McGowan claims his conviction must be reversed because the prosecutor committed flagrant and ill-intentioned misconduct by telling the jury it must be able to articulate and identify a reason in order to acquit him.

We review the allegedly improper comments in the context of the entire closing argument, the issues presented, the evidence addressed, and the instructions given to

3

the jury. State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994). McGowan bears the burden of establishing that the challenged conduct was both improper and prejudicial. State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).

Where, as here, a defendant does not object, the defendant is deemed to have waived the error "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.' " Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). The reviewing court focuses on whether the resulting prejudice could have been cured. Emery, 174 Wn.2d at 762. " 'The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?' " Emery, 174 Wn.2d at 762[2] (quoting Slattery v. City of Seattle, 169 Wash. 144, 148, 13 P.2d 464 (1932)). The jury is presumed to have followed the court's instructions. State v. Kirkman, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

Here, the court used the standard Washington pattern jury instruction, 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 4.01, at 85 (3d ed. 2008), to instruct the jury as to the burden of proof and the presumption of innocence:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

---

[2] (Alteration in original.)

4

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

During closing, the prosecutor argued,

I want to talk first about the burden of proof. The burden of proof in this case is beyond a reasonable doubt. And the judge read the instruction about what a reasonable doubt is. I'm going to talk about that for just a second. There's four things that make up a reasonable doubt. The reason must exist. That means you just can't throw up your arms and say this is a really tough job. You have to actually, if you are considering whether there's a reasonable doubt, you have to be able to articulate and identify a reason.

When you're thinking about what that reason is, if it's a reasonable doubt, it has to be reasonable. It can't be something that doesn't make any sense.

McGowan contends that, as in Emery, 174 Wn.2d at 759-60, the prosecutor's argument that the jury must articulate and identify a reason to doubt improperly shifted the burden to the defense.

In Emery, the prosecutor argued,

"[I]n order for you to find the defendant not guilty, you have to ask yourselves or you'd have to say, quote, I doubt the defendant is guilty, and my reason is blank. A doubt for which a reason exists. If you think that you have a doubt, you must fill in that blank."

Emery, 174 Wn.2d at 750-51.[3] The Court concluded the statement "improperly implies that the jury must be able to articulate its reasonable doubt by filing in the blank," which is "inappropriate because the State bears the burden of proving its case beyond a reasonable doubt, and the defendant bears no burden." Emery, 174 Wn.2d at 760. The

---

[3] (Alteration in original.)

5

Court observed that the argument "subtly shifts the burden to the defense." Emery, 174 Wn.2d at 760. But because any potential confusion resulting from the comment could have been cured if the defendant had objected and the trial court had reiterated the proper burden of proof, thereby eliminating any potential prejudice, the Court held reversal was not warranted. Emery, 174 Wn.2d at 763-64.

The Court in Emery directed the appellate court to "focus on the effect of the prosecutor's misconduct" rather than to evaluate misconduct by " 'what was said or done.' " Emery, 174 Wn.2d at 761-62 (quoting State v. Navone, 186 Wash. 532, 538, 58 P.2d 1208 (1936)). Thus, the proper inquiry here is whether the prosecutor's single remark caused such prejudice in the minds of the jury as to prevent McGowan from having a fair trial. Emery, 174 Wn.2d at 762.

Here, as in Emery, McGowan did not object, and the court correctly instructed the jury on the burden of proof. McGowan does not claim or establish that any potential confusion stemming from the prosecutor's subtle shifting of the burden could not have been eliminated by an additional clarifying instruction if he had objected.[4] Because the prosecutor's argument was not so flagrant or ill intentioned that a curative instruction

---

[4] We also conclude that McGowan's reliance on State v. Fleming, 83 Wn. App. 209, 213-14, 921 P.2d 1076 (1996), and cited cases rejecting fill-in-the-blank arguments as improper, is also unpersuasive to argue that the prosecutor's argument in this case was flagrant and ill intentioned. See State v. Walker, 164 Wn. App. 724, 731, 265 P.3d 191 (2011) (improper to argue jury must determine reason for doubt and fill in a blank); State v. Johnson, 158 Wn. App. 677, 684-86, 243 P.3d 936 (2010) (fill-in-the-blank argument improper and flagrant and ill intentioned); State v. Venegas, 155 Wn. App. 507, 523-25, 228 P.3d 813 (2010) (improper fill-in-the-blank argument and additional improper argument constituted flagrant misconduct); State v. Anderson, 153 Wn. App. 417, 431-32, 220 P.3d 1273 (2009) (defendant did not demonstrate improper fill-in-the-blank argument was so flagrant or ill intentioned as to result in incurable prejudice).

could not have neutralized the remark, we conclude McGowan has not established prosecutorial misconduct that warrants reversal, and affirm.

WE CONCUR: